## POLLAK *v.* BRUSH ELECTRIC ASSOCIATION OF ST. LOUIS.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE MIDDLE DISTRICT OF ALABAMA.

No. 43.   Argued and submitted October 29, 1888. — Decided November 19, 1888.

In Alabama, when a defendant pleads specially and generally, and the special plea contains nothing of which the defendant cannot avail himself under the general issue, an error in sustaining a demurrer to the special plea, as it works no injury, constitutes no ground for reversal.

In Alabama a written agreement between the parties may be read in evidence without proof of its execution, unless the execution is denied by plea, verified by affidavit.

The agreement which formed the subject of controversy in this action

related to a renewal of the existing contract of the plaintiff in error for lighting certain streets in Montgomery, and not to an enlargement of that contract so as to include other streets; and being so construed, the requisite renewal was effected by the acts of the parties referred to in the opinion of the court, without a written contract, covering a fixed period of time.

Covenants are to be considered dependent or independent, according to the intention of the parties, to be deduced from the whole instrument; and in this case the covenants of the plaintiff in error, to pay money for goods sold and delivered, were independent of the covenants of the defendant in error to transfer certificates of stock in a corporation.

THIS writ of error brought up for review a judgment in favor of the Brush Electric Association of St. Louis, plaintiff below, against the plaintiff in error for the sum of $6458.10.

Besides the common count for goods and merchandise sold to the defendant, Pollak, the complaint contained a special count based on a written agreement between the parties, executed November 13, 1883. By the first article of that agreement, Pollak agreed to pay to the plaintiff the sum of $7942 as follows: "Seven thousand dollars in cash on the execution of this agreement, and the sum of nine hundred and forty-two dollars on the first day of January, 1884, in full settlement and satisfaction of all claims and demands due by Pollak & Co. and the Brush Electric Light and Power Company of Montgomery, Alabama, to the said Brush Electric Association of St. Louis; and the Brush Electric Association agrees to transfer or cause to be transferred to said Ignatius Pollak, without recourse, all the shares now held by the said Brush Electric Association and the Brush Electric Company of Cleveland, Ohio, in the said Brush Electric Light and Power Company of Montgomery, Alabama."

The remaining articles of the agreement were in these words:

"Second. The said Brush Electric Association of St. Louis agrees to furnish to the said Ignatius Pollak one number 8 dynamo-electric machine, one automatic dial for said machine, and forty arc lamps of two thousand candle power each, of different styles, for which the said Ignatius Pollak agrees to pay to the said Brush Electric Association of St. Louis by the

first day of January, 1885, twelve per cent of the cost of said machinery as per card rate hereto attached, signed by the parties and made a part of this agreement, which card rate is agreed by the parties to be the cost of said machinery. This twelve per cent, it is agreed by the parties, is to be considered a rental of said machinery, dial and lamps for the term of one year, and which are furnished to enable the said Ignatius Pollak to comply with his contract with the city council of Montgomery to light the streets of the city of Montgomery with electric lights.

"Third. It is further agreed that in case the city council of Montgomery shall conclude to adopt the Brush electric light for the future lighting of the streets of the said city of Montgomery, Alabama, after the expiration of the time of the present contract between said Pollak and Company and the city council of Montgomery, that the said Ignatius Pollak will pay to the said Brush Electric Association of St. Louis, Missouri, by the first day of January, 1885, the cost of said machinery, dial and lamps as fixed and ascertained by said card rate hereto attached, and in that event the said Ignatius Pollak is not to pay the said twelve per cent, said twelve per cent being a separate and distinct arrangement, as a fair rental for the use of said machinery, dial and lamps by the said Ignatius Pollak and for the risk assumed by the Brush Electric Association in furnishing the same to the said Ignatius Pollak in case the said city council of Montgomery shall conclude not to continue lighting the streets of Montgomery with the Brush electric light after the expiration of their present contract with said Pollak & Co.

"Fourth. It is further understood and agreed that in case the said city council of Montgomery shall not conclude to continue lighting the streets of the said city of Montgomery with the Brush electric light after the expiration of their present contract with said Pollak & Co., the said Ignatius Pollak shall deliver the said dynamo-electric machine, said automatic dial, and said lamps by the first day of January, 1885, fully repaired and in good working order, to the said Brush Electric Association of St. Louis, at Cleveland, Ohio,

or St. Louis, Missouri, as may be directed by the said Brush Electric Association of St. Louis, and that the title and property in and to said machinery, dial and lamps shall be and remain in the said Brush Electric Association of St. Louis, until and unless the said Ignatius Pollak pays the cost of said machinery, dial and lamps, as provided by this agreement, in the third clause thereof.

"Fifth. It is further understood and agreed that the said Ignatius Pollak shall have the right to purchase from the said Brush Electric Association of St. Louis any machinery and any pieces and parts of machinery which may be necessary for repairing and keeping in working order the present machinery in said city of Montgomery, and the machinery furnished to him by this agreement, at the same rates at which such machinery and pieces and parts of machinery are sold at the time to other private consumers by the said Brush Electric Association of St. Louis."

There was appended to this agreement a stipulation, signed by the parties, that the "delivery of said dynamo-electric machine, dial and lamps on board the cars at said city of Montgomery, consigned to the said Brush Electric Association of St. Louis, at Cleveland, Ohio, or St. Louis, Missouri, as said Brush Electric Association may direct, costs of transportation prepaid, by the first day of January, 1885, shall be considered and held a delivery by said Ignatius Pollak, as provided in the fifth clause of the aforegoing agreement."

The card rates attached to the above agreement, and referred to in its second article, were these:

"St. Louis, Mo., Nov. 13, 1883.

"Mr. Ig. Pollak, Montgomery, Ala.,

"'83.          Bought of the Brush Electric Association.

| | | | | | |
|---|---|---|---|---|---:|
| "Oct. 25. | 30 | No. 11 | Lamps, | 60 . . . . . . . . . . | 1800 |
| | 6 " | 3 " | | 60 . . . . . . . . . . | 360 |
| | 2 " | 2 " | | 50 . . . . . . . . . . | 100 |
| | 2 " | 17 " | | 60 . . . . . . . . . . | 120 |
| | 1 " | 8 dynamo | | . . . . . . . . . . | 3600 |
| | 1 " | 8 dial | | . . . . . . . . . . | 200 |
| | | | | | 6180" |

At the time this agreement was made Pollak had a contract with the city of Montgomery for the lighting of its streets, which expired November 1, 1884. On the 4th of October, 1884, he addressed a communication to the city council, referring to the fact that the contract between him and the city "for twenty-three electric lights for street purposes" would expire on the 1st of November, and asking prompt action as to whether it would be renewed by the city, or whether additional lights would be taken. He further said in his communication : "Having incurred very heavy expense in bringing extra machinery here, and having to pay a heavy rental for the additional dynamo required for the city purposes, it becomes absolutely necessary that your decision should be rendered as early as possible, so that in the event of your declension to renew the contract I may be able to take down, pack and deliver the machinery at Cleveland, Ohio, within the time stipulated with the parent company of the Brush Electric Association." On the 6th of October, 1884, that communication was referred by the city council to the gas committee; and, on the 3d of November, 1884, the recommendation of the committee, "that the contract with Pollak & Co. to furnish the city with twenty-three electric lights be renewed for one year," was adopted by the council. At a subsequent meeting of that body, held January 19, 1885, it was resolved that, "renewing the contract for the electric light, the mayor is authorized and instructed to make the contract with the Brush Electric Light and Power Company." Of that company Pollak was president, and seemed to have exclusive control and direction of its business, including the property and machinery connected therewith. It was in proof that the dynamo and machinery sued for in this action were received by the defendant and used by him in performing his contract ; that, at the time of the trial below, they were in use at the works of the last-named corporation, which had furnished the electric light during the existence of the contract between the city and Pollak; and that the city continued after November 1, 1884, to make monthly payments to the defendant.

It was also in proof that there were about eighty miles of streets and more than one hundred different streets within the corporate limits of Montgomery, and that only a small portion of the city was ever lighted by the Brush electric light; that Commerce street and Dexter avenue were the only thoroughfares or streets that were thus lighted continuously all the way from end to end; that only twenty-three electric lights or lamps in all were or ever had been used or employed in the city for street lighting purposes; that the remainder of the lights not used on Commerce street and Dexter avenue were employed on parts of certain streets and were confined within a narrow compass, mainly in the business centre of the city; that no greater number of lights or lamps were employed or contracted for, at any time, in the city for street lighting purposes than were used in the year 1884 up to the 1st of November of that year; that the area or territory covered with these lights had not in any manner been enlarged; and that there were a great variety of electric lights other than the Brush electric light serviceable for lighting streets, and in use in various cities of the United States.

It was further proven by a witness that the legislature of Alabama convened in Montgomery on the 11th of November, 1884, remaining in session before its recess, during the balance of that month and a part of the succeeding month; that in the absence of any contract between the city and the defendant after the 1st day of November, 1884, the mayor of the city made a temporary arrangement with the defendant to furnish the Brush electric light to the city for the purpose of keeping the portion of the city above described lighted during the balance of the month of November and the month of December, 1884.

This was in substance all the proof in the cause. The court charged the jury that if they believed the evidence the plaintiff was entitled to recover the prices of the machinery, as fixed in the above card of rates, with interest from January the 1st, 1885.

Verdict for plaintiff and judgment on the verdict.

*Mr. Samuel F. Rice* and *Mr. A. A. Wiley,* for plaintiff in error, submitted on their brief, citing: *Nash* v. *Towne,* 5 Wall.

689; *Bank of Columbia* v. *Hagner*, 1 Pet. 455; *Barreda* v. *Silsbee*, 21 How. 146; *Merriam* v. *United States*, 107 U. S. 437; *Davenport* v. *Lamb*, 13 Wall. 418; *Harkness* v. *Russell*, 118 U. S. 663; *Young* v. *Hunter*, 6 N. Y. 203; *United States* v. *Peck*, 102 U. S. 64

*Mr. H. C. Tompkins*, for defendant in error, cited: *Kannady* v. *Lambert*, 37 Alabama, 57; *Chambers County* v. *Clews*, 21 Wall. 317; *Holloway* v. *Tolbert*, 70 Alabama, 389; *Beadle* v. *Graham*, 66 Alabama, 99; *Darden* v. *James*, 48 Alabama, 33; *Bank of Columbia* v. *Patterson*, 7 Cranch, 299; *Dermott* v. *Jones*, 2 Wall. 1; *Ferguson* v. *Harwood*, 7 Cranch, 408; *Harrison* v. *Weaver*, 2 Porter (Ala.) 542; *Weaver* v. *Lapsley*, 42 Alabama, 601; *S. C.* 94 Am. Dec. 671; *McRae* v. *Raser*, 9 Porter (Ala.) 122; *Goodlet* v. *Louisville & Nashville Railroad*, 122 U. S. 391; *Randolph* v. *B. & O. Railroad*, 109 U. S. 478; *City Council* v. *Montgomery Water Works*, 77 Alabama, 248; *Whitehead* v. *Lane*, 72 Alabama, 39, 42; *Lowery* v. *Peterson*, 75 Alabama, 109; *Goldsborough* v. *Orr*, 8 Wheat. 217; *Walker* v. *Clay*, 21 Alabama, 797; *Phil., Wilm. & Balt. Railroad Co.* v. *Howard*, 13 How. 307, 339; *Emigrant Co.* v. *Adams County*, 100 U. S. 61; *Hill* v. *Bishop*, 2 Alabama, 320; *Pordage* v. *Cole*, 1 Saund. 310; *Crawford* v. *Weston*, 131 Mass. 283; *Lucesco Oil Co.* v. *Brewer*, 66 Penn. St. 351; *Quigley* v. *DeHaas*, 82 Penn. St. 267, 273; *Scott* v. *Kittanning*, 89 Penn. St. 231; *Johnson* v. *Johnson*, 3 Bos. & Pull. 162; *Young & Conant Mf'g Co.* v. *Wakefield*, 121 Mass. 91; *Barth* v. *Clise*, 12 Wall. 400; *Philpot* v. *Gruninger*, 14 Wall. 570; *Walbrun* v. *Babbitt*, 16 Wall. 577; *Chicago &c. Railroad* v. *Ross*, 112 U. S. 377, 395; *Pennywit* v. *Eaton*, 15 Wall. 382; *Hall* v. *Jordan*, 19 Wall. 271; *Insurance Co.* v. *Huchbergers*, 12 Wall. 164; *Prentice* v. *Pickersgill*, 6 Wall. 511.

MR. JUSTICE HARLAN delivered the opinion of the court.

He stated the case as above reported, and continued:

1. The special pleas contained nothing of which the defendant could not have availed himself under his plea of the gen-

eral issue. If the court erred in sustaining the demurrer to any of the special pleas, it was an error without injury, and, therefore, not constituting a ground of reversal. Code of Alabama, 1886, § 2675; *Kannady* v. *Lambert*, 37 Alabama, 57, 59.

2. It was not error to allow the written agreement between the parties to be read in evidence without proof of its execution. The Code of Alabama provides that "every written instrument, the foundation of the suit, purporting to be signed by the defendant, his partner, agent, or attorney in fact, must be received in evidence without proof of the execution, unless the execution thereof is denied by plea, verified by affidavit." § 2770. There was no such plea in this case.

3. By the terms of the agreement between the parties, the defendant was to pay a certain amount to the plaintiff, by a named day, for the machinery, dial and lamps, provided the city council of Montgomery concluded "to adopt the Brush electric light for the future lighting of the streets" of that city, after the expiration of the contract which Pollak & Company then had with the city. The main question in the case is, whether the contingency just stated happened prior to January 1, 1885; if so, the contract between the parties became one of absolute sale, and bound the defendant to pay on that day the specified card rates for the property.

The defendant insists that the agreement, construed in the light of the circumstances attending its execution, contemplated something more than the adoption by the city council of the Brush electric light for the limited territory covered by the contract which Pollak & Co. then had with the city; and that the parties made their agreement with reference to an enlargement, after the expiration of that contract, of the area in the city to be lighted with the Brush electric light. We do not assent to this construction. The agreement was made in view of the fact that the city was then using, under the contract with Pollak & Co., only twenty-three of the Brush electric lights. The machine, dial and lamps furnished by the defendant were used, and presumably were needed, in order that Pollak & Co. might perform that contract. He was to

pay only certain rental therefor in case the city council con-
cluded "not to *continue* lighting the streets of Montgomery
with the Brush electric light after the expiration of the pres-
ent contract with said Pollak & Co.," and if the council con-
cluded otherwise, then the machine, dial and lamps were to
be returned to the defendant, fully repaired and in good work-
ing order, by January 1, 1885. These provisions clearly show
that the lighting of the streets after November 1, 1884, with
the Brush electric light, under an arrangement for that pur-
pose with the city council, even to the limited extent provided
for by the contract with Pollak & Co., was, within the mean-
ing of the parties, such an adoption of that light by the city
as bound the plaintiff to purchase the machine, dial and lamps
in question and pay therefor, by January 1, 1885, the sum of
$6180. It could not have been their intention to make the
permanent adoption of the Brush electric light, for an indefi-
nite period for *all* the streets of the city, or for a larger terri-
tory than that stipulated for in the contract with Pollak &
Co., a condition precedent to the defendant's obligation to buy
the property at the aggregate price fixed. The communica-
tion of Pollak to the city council, under date of October 4,
1884, supports this conclusion. He distinctly says that if the
then existing contract was not *renewed*, he was under a duty
by his agreement with the defendant to take down, pack and
deliver the machinery at Cleveland, Ohio; implying that if his
contract was renewed no such duty would rest upon him. And
that the contingency happened upon which the defendant
became bound to purchase the property outright at the price
above named, appears from the fact that the contract of Pollak
& Co. was renewed. That renewal is shown by the action of
the city council on the 3d of November, 1884. Its action in
response to the written communication of Pollak, under date
of October 4, and its monthly payments thereafter to him,
operated as an effective renewal of his contract with the city,
although such renewal was not evidenced by a written con-
tract covering a fixed period of time. *City Council of Mont-
gomery* v. *Montgomery Water Works*, 77 Alabama, 248, 254.

4. It is also contended that the plaintiff was not entitled to

recover, except upon averment or proof that it had transferred or offered to transfer to the defendant the shares of stock held by it and by the Brush Electric Company of Cleveland, Ohio, in the Brush Electric Light and Power Company of Montgomery. This cannot be, unless, as insisted, his promise to pay, in the contingency named in the third article of the agreement of November 13, 1883, the sum of $6180, was in consideration of the plaintiff's promise to transfer, or have transferred to him, the above shares. In support of this position the case of *Bank of Columbia* v. *Hagner*, 1 Pet. 455, 465, is cited. It was there said that the inclination of the courts strongly favors, as obviously just, that construction of contracts which makes the covenants or promises of the parties dependent rather than independent. After observing that the seller ought not to be compelled to part with his property without receiving the consideration, nor the purchaser to part with his money without an equivalent in return, the court said: "Hence, in such cases, if either a vendor or a vendee wish to compel the other to fulfil his contract, he must make his part of the agreement precedent, and cannot proceed against the other without an actual performance of the agreement on his part, or a tender or refusal."

But it is clear, as said in *Philadelphia, Wilmington & Baltimore Railroad Company* v. *Howard*, 13 How. 307, 339, that covenants are to be considered dependent or independent, according to the intention of the parties, to be deduced from the whole instrument. It is manifest that the covenant of the plaintiff in relation to the transfer of stock in the Brush Electric Light and Power Company is wholly independent of the agreement in relation to the machine, dial and lamps in question. The consideration for such transfer, and for the settlement and satisfaction of all claims due by Pollak & Co. and by the Brush Electric Light and Power Company to the plaintiff, was the payment by Pollak of a certain amount, part in cash on the execution of the agreement of November 13, 1883, and the balance on the 1st of January, 1884. On the other hand, the consideration for Pollak's agreement to pay, in a certain contingency, a specified sum for the machine,

dial and lamps, was his becoming the absolute owner of those articles, upon the happening of that contingency.  The cost of the articles was fixed by the agreement at a certain aggregate sum, without reference to the transfer of the above-mentioned stock.  There is nothing whatever in the contract indicating that the payment for the machine, dial and lamps was to depend, in any degree, upon the transfer of the stock, or that the transfer of the stock was to depend upon the adoption of the Brush Electric Light by the city.  The covenants were wholly independent; and, therefore, it was not essential, to the plaintiff's right to recover, that it should allege or prove that its agreement to transfer, or have transferred, to the defendant, the above-described stock, had been performed.  That may be the subject of a separate suit.

As the court below correctly interpreted the agreement between the parties, and as the evidence showed that the contingency happened which entitled the plaintiff to recover the sum specified in the agreement as the value of the property, the direction to the jury to find for the plaintiff was right. *Goodlet* v. *Louisville & Nashville Railroad*, 122 U. S. 391; *Kane* v. *Northern Central Railroad*, *ante*, 91.

*The judgment is affirmed.*