## GEORGE T. O'BRIEN v. LIBERTY MINING COMPANY AND OTHERS.[1]

July 10, 1925.

No. 24,595.

**When time of performance by one party to contract may arrive before time for performance by other, latter promise is independent—effect of its nonperformance.**

1. Where the time for performance, in whole or in part, by one party to a contract, is to arrive or may arrive before the time for performance of a given promise by the other, the latter promise is independent. The only effect of its nonperformance is to create a cause of action. It does not constitute a bar to the right of the promisor to recover for the breach of an independent promise to him, and certainly does not deprive him of the right to retain the benefit, if such an independent promise to him has been performed and the contract to that extent executed.

**Rule applied to contract which gave attorney share of royalties on mining lease in return for his negotiating it.**

2. M owned two tracts of land, a 40 and an 80. B was his attorney. In 1909 they entered into a written contract reciting past services by B in connection with both tracts and particularly his endeavors to put the 80 under a mining lease. B promised such additional professional aid as might be required in connection with a lease of the 80, if one was negotiated. M agreed, upon the making of a lease, to assign to B one-tenth of the royalties payable thereunder. In 1917, M having died in the meantime, a lease was negotiated by B, and,

[1]Reported in 204 N. W. 625.

pursuant to his contract with M, the latter's heirs assigned to B one-tenth of the royalties payable thereunder. In 1919 occurred the death of B. This action to recover one-tenth of the royalties accrued since his death is resisted upon the ground that the 1909 contract was for the continuing services of B, and so far entire that his death terminated it and abrogated the assignment to him. *Held:* That M's promise to assign one-tenth of the royalties was dependent only upon the success of B's promised efforts to procure a lease.

1. See Contracts, 13 C. J. pp. 570, § 540, 627, § 693, 629, § 695.
2. See Attorney and Client, 6 C. J. p. 738, § 314.

2. See note in 52 L. R. A. (N. S.) 380; 2 R. C. L. p. 1050; 1 R. C. L. Supp. p. 688.

Action in the district court for Crow Wing county to recover certain royalties payable under a mining lease. The case was tried before McClenahan, J., who ordered judgment in favor of defendant. Plaintiff appealed from an order denying his motion for a new trial. Reversed.

*F. H. De Groat, E. L. Johnson* and *G. H. Winsor,* for appellant.
*M. E. & C. A. Ryan,* for respondents.

STONE, J.

Originally this was an action to recover from defendant Liberty Mining Company one-tenth of certain royalties due from it as lessee under a mining lease. Its liability admitted and plaintiff's only controversy being with the heirs of John E. Mattson, deceased, they were impleaded and for convenience will be referred to as defendants. They prevailed below and plaintiff appeals from the order denying his motion for amended findings or a new trial.

Plaintiff's decedent, John Brennan, was an attorney-at-law. He departed this life in 1919. For some time he had been the attorney for John E. Mattson, who died seized of the lands about to be mentioned. In November, 1909, Mattson (his wife joining) and Brennan entered into the written contract which is the starting point of this lawsuit. It recites Mattson's ownership of a 40 and an 80, the latter now subject to the lease here in question; that Brennan

had performed legal services for the Mattsons and had given them "business advice in reference" to all of the described lands, and that he had endeavored "to negotiate an option for a lease" of the 80. In consideration of these premises and the undertaking of Brennan "to act as their attorney in reference to said lands, and to use his best endeavor to negotiate for an option for a lease—a lease or sale of said eighty acre tract and to give them legal and business advice in reference thereto until a lease or sale thereof is made, and in case a lease is made * * * (to) give advice and furnish legal services in reference to such lease and to royalties and the collection of the same," the Mattsons obligated themselves "upon the execution and delivery of a lease" by them of said eighty acre tract to "transfer and assign" to Brennan "one-tenth of any bonus received and of the royalties payable thereunder, or under any subsequent lease or leases thereof." They covenanted also in case of a sale of the 80 to pay Brennan "a sum of money equal to one-tenth of the amount for which it is sold."

Thereafter and in December, 1917, Mr. Mattson in the meantime having passed on, his heirs, defendants, entered into a mining lease of the 80, negotiated for them by Brennan. The lessee has been succeeded in that position by the Liberty Mining Company. The lease was of the conventional type except that Brennan was the "party of the third part" and in definition of his rights thereunder, it recited his contract with Mattson and then proceeded thus:

"Now, therefore, pursuant to said contract and in consideration thereof, the said parties of the first part (defendants) jointly and severally hereby assign and transfer unto the said John Brennan, party of the third part, one-tenth of all royalties payable thereunder."

The document expressly excepts from the royalties payable to the lessors the "one-tenth thereof transferred and assigned to the said John Brennan as aforesaid."

The record does not disclose the nature or extent of the services rendered by Brennan before the lease was made. His performance up to that time entitled him to and resulted in the assignment to

him of one-tenth of the royalties. The lessee developed a mine. Mr. Brennan continued to render services under his contract until 1919, when he too departed this life.

The claim of plaintiff, as administrator of his estate, to one-tenth of the royalties accrued since his death, is resisted upon the ground that the 1909 contract was entire, for the personal services of Brennan, and so far demanding their continuance during the life of the lease that, the contract having been terminated by his death, the assignment of royalties has been abrogated. That theory was adopted below.

Our consideration has led to a different view; but the point of divergence is not in the law controlling ordinary contracts for personal services. It is the rule that such contracts "requiring skill, which can only be performed by the person named, are held not of absolute obligation, under all circumstances, but subject to the implied condition that the person designated shall be able to perform." Sargent v. McLeod, 209 N. Y. 360, 364, 103 N. E. 164, 52 L. R. A. (N. S.) 380. "There is in the nature" of executory contracts for personal services "an implied condition that if the person or thing shall not be in existence at the time stipulated for performance it shall not be required." Cameron-Hawn Realty Co. v. City of Albany, 207 N. Y. 377, 382, 101 N. E. 162, 49 L. R. A. (N. S.) 922. But nonperformance of that condition, due solely to the death of the promisor, does not discharge the contract by breach. It simply terminates it without discharging the promisee from obligations already ripened and imposed upon him by an independent condition already performed by the promisor.

There was no promise by Brennan of his services during the full term of the hoped-for lease. There was only one to "give advice and furnish legal services in reference to such lease and to royalties and the collection of the same." That clearly is very different from a promise to serve during the entire life of the lease. And in view of the fact that Brennan doubtless rendered valuable service, and all that was required of him after the lease was made, his contract may have been fully performed, for certainly it was not in the contemplation of the parties that the services of Brennan, then well

advanced in years, should continue during the life of a 50-year mining lease not yet negotiated. Anyway, they did not say so. We do not place decision on that ground, for there is a surer basis for it. We simply suggest, for the reasons indicated, that the termination of Brennan's services by his death *may* not have created even a cause of action against his estate. For reasons now to be gone into, it certainly did not *undo* what had already been done under the contract.

"If a day is appointed for performing a covenant on one part, and it *is* to happen or *may* happen before the covenants on the other part are to be performed, the covenants are independent." Couch v. Ingersoll, 19 Mass. (2 Pick.) 292, (300). See also Noyes v. Brown, 142 Minn. 211, 171 N. W. 803. In such a case "the latter promise is held to be an independent obligation, the non-performance of which raises a cause of action merely, and does not constitute a bar to the right of the party making it to recover for the breach of the promise made to him." Kinney v. Federal Laundry Co. 75 N. J. Law, 497, 499, 68 Atl. 111. How much the more then is it impossible that, by his breach of an independent covenant, the promisor shall lose all benefit of his admittedly strict performance of a prior covenant, in no wise dependent on the one breached. The breach of the "latter" independent undertaking rests "in covenant merely" and affords, to the promisee, "no ground for avoiding the contract." American Emigrant Co. v. County of Adams, 100 U. S. 61, 70, 25 L. ed. 563. That is a typical case and parallel in principle with this, for the thing there held to rest in covenant merely and not to avoid prior partial performance, was a breach by the recipients of a public land grant of their "engagements with respect to the drainage and settlement of the land." The "engagements" were contractual and the breach thereof proven, yet the grant was sustained as against the claim that the grantees' subsequent breach abrogated it.

Such contracts are wholly or partially divisible. One of the latter may

"contain a promise the performance of which is stated as the price or exchange of certain counter performance; and the contract may

also contain other promises for which no special price is fixed. * * * In such a case a debt arises for the price stated in the contract for a portion of the performance as soon as that portion is rendered, and this debt is recoverable in spite of default in the rest of the contract." Section 872, 2 Williston, Contracts.

We are unable to escape the conclusion that the obligation to assign one-tenth of the royalties to Brennan was dependent *only* upon his performance to and including the negotiation of the lease, and that it was wholly independent of his continuing performance thereafter. The promise of Mattson to assign a portion of the royalties, or of the price in case of sale, was a promise of performance of what was considered "as the price or exchange for certain counter performance," i. e., the success of Brennan's effort to negotiate a lease. If it had been otherwise intended, the contract surely would have said so. The same conclusion attends the assignment itself, for it is absolute and without even a suggestion of the condition subsequent now attempted to be engrafted upon it.

It requires construction to make contract and assignment conditional. A finding of failure of consideration for the assignment would have the same result. As to the first alternative, if construction is necessary, which we doubt, a reasonable result has to be sought and an aid to interpretation is the fact that the usual period of a mining lease is 50 years. It can hardly be considered that Mattson and Brennan, both of them of mature years, contemplated the latter's continuous performance of service during the whole period of a 50-year lease as a condition upon which depended his right absolutely and finally to the assignment of royalties called for by his contract. There was no assurance then of any lease. Both men knew they might be considerably older before a lease was procured. Brennan had already been negotiating for one. A lease was the one dominant purpose and to negotiate one might have required years of additional effort. Yet, if the rule applied below is controlling, Brennan's one and important right would have been defeated by his permanently disabling illness occurring immediately after the execution of the lease. Common experience in such mat-

ters is that the major and most fruitful services precede and result in the lease. That is particularly true if profitable mining proceeds at once. The argument of reasonableness therefore seems to be with appellant, if ambiguity be found or assumed in the controlling documents.

Proceeding to the question of consideration and its supposed fail· ure, it was competent for the parties to determine for themselves the consideration for the promise to assign and to make that promise depend upon a part instead of all the consideration moving from Brennan. And if the consideration for the promise to assign was performance by Brennan up to and including the negotiation of the lease, independently of what was required of him thereafter, then the negotiation of the lease entitled him to his assignment. In that case, his right to performance by Mattson would not be invalidated, or if Mattson's promise to assign was performed, as it has been, it would not be subject to abrogation, by a subsequent failure of Brennan to do something not intended as a part of the consideration for the promise to assign. That is particularly true where the subsequent failure was in an independent matter, even though it terminated the contract, as it does, in the case of the death of a con· tracting party.

In our view, the contract was so far divisible, and its promise to assign to Brennan upon the negotiation of a lease so far independent of what was to follow on his part, that the assignment to him is a special undertaking, executed by the parties themselves. It stands as a thing accomplished—not to be undone by what followed, the death of the assignee some two years afterwards.

The authorities relied on below have to do, in the main, with personal service contracts and their termination by the death or disability of the person whose services were required. The problems arising were as to part performance of entire contracts. They do not deal with the rights attending performance of independent conditions. In the latter case, while performance may be partial from the standpoint of the contract, it is complete from that of its own separate subject matter. While there is an uncompleted contract,

there is a finished contractual undertaking, and if the parties have allocated to its completion a distinct consideration, the one who has so far performed is entitled to the consideration designated for his performance. Spear v. Snider, 29 Minn. 463, 13 N. W. 910. In such a situation, neither the agreement nor the nature of the subject matter indicates that a failure to obtain a part of the benefits contracted for "would materially affect the object of the contract, and thus have influenced" it had the failure been anticipated. Norris v. Harris, 15 Cal. 226, as quoted and applied in McGrath v. Cannon, 55 Minn. 457, 460, 57 N. W. 150. Compare Pollak v. Brush Elec. Assn. 128 U. S. 446, 9 Sup. Ct. 119, 32 L. ed. 474.

Here, the dominant purpose was to lease the 80. To the accomplishment of that end, all else, particularly what was to follow, was collateral, or more accurately, incidental. So Brennan, while agreeing to continue his services, was promised a definite compensation, a stated performance, by the Mattsons, at an indeterminate and contingent point, the accomplishment of the controlling object of his employment, the lease. The contingency became reality, the attending obligation has been performed and, the contract being divisible, has so far been executed and is at an end through performance. An independent contractual structure so far completed is not subject to destruction because the contractor subsequently fails to bring up to the required standard his performance of another but independent undertaking of the same contract.

It is all a question of the intent of the parties—not of some unexpressed design or mental reservation entertained by one or both, but of the intent, the contractual assent, expressed in the controlling documents. We cannot make the assignment to Brennan conditional, for we consider it intended to be unconditional. That conclusion seems to arise on the contract itself and is confirmed by the assignment—not from Mattson, but his heirs. If intended to be conditional, why was it not originally limited upon the continuance, to the end, of Brennan's services? We are not only construing the contract as its language seems to require, but are adopting the very construction the defendants themselves put upon it

when in 1919, on the making of the lease, they gave Brennan not a conditional but absolute grant of his portion of the royalties.

Farmers Trust Co. v. Prudden, 84 Minn. 126, 86 N. W. 887, furnishes little aid. The assignment of rents there involved was not absolute, but created a lien which was sought to be and was foreclosed. The case was discussed with respect to peculiarities of mortgage law not involved here. No discussion is called for of the language proper for characterization of the royalties in question for, whatever terminology may be used, it is clear that they are subject to assignment. "In such case the assignee is the owner of the rents." Cargill v. Thompson, 57 Minn. 534, 544, 59 N. W. 638. "Unaccrued rents are not personal property. They are incorporeal hereditaments. They are incident to the reversion and follow the land", but of course may be transferred apart from it. State v. Royal Mineral Assn. 132 Minn. 232, 235, 156 N. W. 128, Ann. Cas. 1918A, 145. The assignment to Brennan had all the formalities required for a grant of land or an interest therein and however considered, it was absolute, not limited upon a condition subsequent, particularly one broken by the death of the assignee. Accordingly, plaintiff is entitled to enforce it as made.

Order reversed with directions to amend the conclusions of law in conformity with the views here expressed and to order the appropriate judgment for plaintiff.