VAN SLYKE et al. v. KELM, U. S. Collector of Internal Revenue.

VAN SLYKE v. KELM, U. S. Collector of Internal Revenue.

Nos. 2094, 2095.

United States District Court
D. Minnesota, Third Division.

Sept. 15, 1952.

**DONOVAN, District Judge.**

Plaintiffs in these two actions seek to recover from defendant amounts of deficiency assessments paid under protest. Civil action No. 2094 is a joint action in which the administrator of the estate of William R. Van Slyke, hereinafter referred to as decedent, and Frances B. Van Slyke, his widow, seek to recover income taxes in the amount of $3,304.16 paid for the calendar years 1942 and 1943. In Civil action No. 2095 recovery is sought of $6,702.68, representing income taxes paid by the decedent for the calendar year 1944. In each case, legal interest is claimed from the dates of tax payments.

A jury was waived and the cases were consolidated for trial to the court. The pertinent facts are undisputed, and a summarizing thereof may be helpful.

Decedent was a mining engineer by profession. From the time of his graduation at the Michigan College of Mines in 1905 until the time of his death on December 22, 1947, he was actively engaged in the pursuit of his profession. At the time of his demise, and for some time prior thereto, he was employed as a supervisor of mineral interests of various owners of iron ore lands in Minnesota.

His knowledge of the ore fields in northern Minnesota and his contacts with owners thereof and operating interests peculiarly fitted him as one most capable of bringing owners and operators together for the purpose of effectuating contracts of lease leading to the production and shipment of iron ore. The owner leased the land containing the ore to the operator, who thereupon mined the ore, paying the owners a royalty on each ton of ore produced and shipped. These negotiations were commenced by decedent in 1937.

On December 13, 1940, as a result of the service rendered by decedent, a mining lease covering iron ore property in St. Louis County, Minnesota, hereinafter referred to as the Schley Mine, was entered into with North Range Mining Company for a term of thirty years from January 1, 1941. The lessee operator was obligated thereby to pay the owners royalties on ore mined and shipped. By a separate agree-

Cleon Headley and David W. Raudenbush and Morgan, Headley, Raudenbush & Morgan, St. Paul, Minn., of counsel. Stone, Manthey & Carey, Virginia, Minn., of counsel, for plaintiffs.

Philip Neville, U. S. Atty., Miles Lord, Asst. U. S. Atty., St. Paul, Minn., Ellis N. Slack, Acting Asst. Atty. Gen., Andrew D. Sharpe and Paul S. McMahon, Sp. Assts. to the Atty. Gen., Department of Justice, for defendant.

ment dated January 7, 1941, the North Range Mining Company agreed to pay decedent, in consideration of services rendered by himself and also by one Max H. Barber, the sum of five cents per ton on all ore actually shipped under the lease, two and one-half cents of which was to be paid to decedent and the remaining two and one-half cents to the said Barber.

On April 1, 1941, by virtue of like service rendered by decedent in behalf of other fee owners, a mining lease of another iron ore property in said county and state, hereinafter referred to as the Douglas Mine, was entered into with the Evergreen Mines Company, for a term of fifty years from April 1, 1941, which lease obligated the lessee operator to pay royalty at a stipulated rate upon 50,000 tons per year whether or not that amount was mined, but with the privilege of crediting any unearned royalty in any one year against production above the minimum in the succeeding year or years. Minimum royalty was to be waived for the first year if the lessee spent $16,000 in developing the property. In consideration of the services rendered by decedent the lease further obligated the lessee to pay the sum of two cents per ton directly to him upon the same terms and conditions as the royalties stipulated to be paid the lessors. During all times herein, actual production from the Douglas Mine exceeded this minimum.

The said leases were in conventional form providing for cancellation upon notice (as all such leases provide) and, except for being named as a payee in the Douglas Mine lease, decedent was not otherwise described as an interested party, nor did he participate in the execution thereof.

On December 31, 1942, decedent, by separate instruments assigned to Frances B. Van Slyke, "the income which would accrue to me, if this assignment were not given, for iron ore mined and shipped between January 1, 1943, and December 31st, 1944, both dates inclusive." Pursuant thereto the lessees paid to Frances B. Van Slyke all sums accruing to decedent thereunder, and she pursued the same course for the years 1943 and 1944 in reporting income to defendant for tax purposes as she and decedent had followed in 1941 and 1942.[1]

Plaintiffs contend they are entitled to the depletion allowance sued for because decedent, having bartered his professional services for the obligations of the corporate lessee operators and the owners to pay

1. It is not disputed (although relevancy thereof is questioned by defendant) that decedent received payments aggregating $5,924.96 from North Range Mining Company in connection with its operation of the so-called Schley Mine in the calendar year 1941. This amount, less unit cost depletion figured at $3,602.35, was reported as "Income From Rents and Royalties" in the amended joint federal income tax return of decedent and his wife, Frances B. Van Slyke, for the calendar year 1941, filed September 11, 1942. In a rider attached to said amended return, in support of his claim of unit cost depletion, decedent computed the value of his entire interest in said Schley Mine at $82,002.42. He included nothing in gross income as the value of such interest, nor as the value of his interest in the so-called Douglas Mine. Decedent received no payments from Evergreen Mines Company in connection with its operation of the Douglas Mine in the calendar year 1941.

Decedent received payments aggregating $18,710.21 from North Range Mining Company in connection with its operation of the Schley Mine in the calendar year 1942, and $1,851.41 from Evergreen Mines Company in connection with its operation of the Douglas Mine in the calendar year 1942. These amounts, less percentage depletion at the statutory rate of 15%, were reported as "Income From Rents and Royalties" in the separate federal income tax return of decedent for the calendar year 1942, filed March 15, 1943.

The foregoing depletion claims, whether on a unit cost basis or a percentage basis, were denied by the Commissioner of Internal Revenue. Decedent and his wife took no further action in respect to their tax liability for the calendar year 1941. The Commissioner of Internal Revenue did not propose or make any deficiency assessment in connection with their income tax for the calendar year 1941.

The government does not deny the validity of the assignment under Minnesota law, saying it has been assumed by both sides that the assignment was valid and that the payments were made to Frances B. Van Slyke.

him two and one-half cents and two cents per ton on all ore to be shipped under the said leases respectively, was therefore dependent upon ore production for the return of his service investment and profit, if any, and this, they contend, characterizes his contract rights thereunder as "economic interests" in the Schley and Douglas Mines. As such, they further contend, the "economic interests" were as fully assignable as any other form of property.

Defendant contends that decedent and his wife are not entitled to depletion allowances because they acquired no "economic interests" in said leases or mines involved. Defendant further contends that the assignments in question, while assumed to be valid, concerned services exclusively performed by decedent and income to accrue in connection therewith, and hence is taxable to decedent.

The issues of law in each case may be stated as follows:

1. Did decedent acquire "economic interests" so as to entitle plaintiffs to depletion allowances?

2. Did defendant err in refusing to recognize the assignments for income tax purposes and in allocating such income to decedent?

The applicable provisions of the Revenue Acts having to do with depletion are Sections 23 and 114.[2]

As demonstrated by appeals taken to the United States Supreme Court, it was not always clear as to what constituted the necessary qualifications entitling the taxpayer to "a reasonable allowance for depletion." Commencing with the case of Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489 and down through Burton-Sutton Oil Co. v. Commissioner, 328 U.S. 25, 66 S.Ct. 861, 90 L.Ed. 1062, the Court developed the term that became known as an "economic interest", usually applied by it to the product in place, and which, when separated from nature, became a source of income.

Treasury Regulation 111 followed the trend of the law indicated by the Supreme Court decisions, and included much of Treasury Regulation 101, Article 23(m)–1 as amended by Treasury Decision 4960. Pertinent for present purposes is the following, quoted therefrom:

Section 29.22(a)–3:

"If services are paid for with something other than money, the fair market value of the thing taken in payment is the amount to be included as income. * * *"

Section 29.23(m)–1:

"Depletion of mines, * * * other natural deposits, * * *. Section 23(m) provides that there shall be allowed as a deduction in computing net income in the case of mines, * * * a reasonable allowance for depletion and for depreciation of improvements. Section 114 prescribes the bases upon

---

2. 26 U.S.C.A. §§ 23 and 114 of the Internal Revenue Code, provides as follows:
"§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions:
* * * * *
"(m) Depletion. In the case of mines, * * * a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. * * *
"(n) Basis for depreciation and depletion. The basis upon which depletion, exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be as provided in section 114.
* * * * *
"§ 114. Basis for depreciation and depletion
* * * * *
"(b) Basis for depletion
* * * * *
"(4) Percentage depletion for coal * * * and metal mines * * *.
"(A) In general. The allowance for depletion under section 23(m) shall be, * * * in the case of metal mines, * * * 15 per centum, * * * of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. * * *"

which depreciation and depletion are to be allowed.

"Under such provisions, the owner of an economic interest in mineral deposits * * * is allowed annual depletion deductions. * * * An economic interest is possessed in every case in which the taxpayer has acquired, by investment, any interest in mineral in place * * * and secures, by any form of legal relationship, income derived from the severance and sale of the mineral * * * to which he must look for a return of his capital. But a person who has no capital investment in the mineral deposit * * * does not possess an economic interest merely because, through a contractual relation to the owner, he possesses a mere economic advantage derived from production. Thus, an agreement between the owner of an economic interest and another entitling the latter to purchase the product upon production or to share in the net income derived from the interest of such owner does not convey a depletable economic interest.

*   *   *   *   *   *

"(i) 'The property' as used in section 114(b) (2), (3), and (4) and §§ 29.23 (m)–1 to 29.23(m)–19, means the interest owned by the taxpayer in any mineral property. * * * "

It had early been held, under the Corporation Tax Law, that "mining leases" were not equivalent to sales of property, and that money paid by the lessees to the fee owners constituted rents or royalties[3] which permitted the lessee to take from the property the ore mined, "paying for the privilege so much per ton for each ton removed."[4]

In Palmer v. Bender, supra, 287 U.S. 551, at page 557, 53 S.Ct. 226, 77 L.Ed. 489, the Court for the first time quite definitely adds to the applicable law the phrase "economic interest" in these words:

"That the allowance for depletion is not made dependent upon the particular legal form of the taxpayer's interest in the property to be depleted was recognized by this Court in Lynch v. Alworth-Stephens Co., 267 U.S. 364, 45 S.Ct. 274, 69 L.Ed. 660. There a depletion allowance under section 12(a) of the 1916 act, 39 Stat. 767, was claimed by a lessee of a mining lease, in the computation of tax on income from the proceeds of ore mined. The statute made no specific reference to lessees, and the government argued that, as the lessee acquired no ownership of the ore until the severance from the soil (see United States v. Biwabik Mining Co., 247 U.S. 116, 123, 38 S.Ct. 462, 62 L.Ed. 1017), the lease gave him no depletable interest in the ore in place. But this Court held that, regardless of the technical ownership of the ore before severance, the taxpayer, by his lease, had acquired legal control of a valuable economic interest in the ore capable of realization as gross income by the exercise of his mining rights under the lease. Depletion was, therefore, allowed."[5]

▮▮ Of course, a mere shareholding of capital stock of a corporation would not be equivalent to an "economic interest."[6] The holder of a royalty interest, however, is to be distinguished as "an economic interest" of the product in place "which is depleted by severance."[7] The same reasoning applies even though the holder of the royalty is once removed from the fee

---

3. Von Baumbach v. Sargent Land Co., 242 U.S. 503, 37 S.Ct. 201, 61 L.Ed. 460.

4. United States v. Biwabik Mining Co., 247 U.S. 116, 125, 38 S.Ct. 462, 62 L.Ed. 1017.

5. In Lynch v. Alworth-Stephens Co., 267 U.S. 364, at page 369, 45 S.Ct. 274, 275, 69 L.Ed. 660, the Court said:
   "It is, of course, true that the leases here under review did not convey title to the unextracted ore deposits * * * but it is equally true that such leases * * * created a very real and substantial interest therein. * * * And there can be no doubt that such an interest is property."

6. Helvering v. O'Donnell, 303 U.S. 370, 58 S.Ct. 619, 82 L.Ed. 903.

7. Anderson v. Helvering, 310 U.S. 404, 60 S.Ct. 952, 955, 84 L.Ed. 1277.

owner by virtue of having rendered a service entitling him to a fraction of the royalty paid by the lessee when the product is separated from the soil and shipped to market, for if the "services are rendered in consideration of a capital asset, those services constitute the purchase price incident to the investment, and comprise a cost base recoverable by depletion." [8]

"Economic interest" does not mean title to the ore in place in the case at bar, but rather it applies to the possibility of profit from the mining and shipping of the ore.[9]

The question as to whether decedent had such an "economic interest" as to entitle plaintiffs to a depletion allowance seems to me to be answered in the affirmative in the last sentence of the opinion in the Kirby case, 326 U.S. 599, at page 607, 66 S.Ct. at page 412, the Court saying:

"In our view, the 'net profit' payments in these cases flow directly from the taxpayers' economic interest in the oil and partake of the quality of rent rather than of a sale price. Therefore, the capital investment of the lessors is reduced by the extraction of the oil and the lessors should have depletion."

Defendant admits that the negotiations leading to the execution of the leases were carried on by decedent in behalf of the lessors. Obviously his interest was so closely interwoven with that of the fee owners as to bring him within the Kirby and Burton-Sutton decisions, supra. This must be so whether the lessor or the lessee was to assume formal responsibility to protect his interest, whether by direct payment by the lessor as in the Douglas lease, or by separate agreement with the lessee, thereby diminishing the royalty which the fee owner could have otherwise bargained for, as was done in respect to the Schley lease. In either event, the substance of direct barter of decedent's personal services for the share of future production of a natural resource remained unchanged, and thereby conferred upon the barterer an "economic interest" therein.[10]

■ The remaining issue has to do with defendant's refusal to recognize the assignments for income tax purposes. Government counsel at the trial of the instant cases had some thought that the assignments from decedent to his wife were invalid by virtue of a Minnesota statute.[11] Briefing the point, counsel now concedes validity, but argues that the assignments cannot be used as a means to evade payment of the tax here involved. If income rather than an "economic interest" were the subject matter of the tax, then the government should prevail, for it has been held by the United States Supreme Court[12] and the

---

8. Commissioner of Int. Rev. v. Rowan Drilling Co., 5 Cir., 130 F.2d 62, 65.

9. Kirby Petroleum Co. v. Commissioner, 326 U.S. 599, 604, 66 S.Ct. 409, 90 L.Ed. 343.

10. It is alleged in the complaint and admitted in the answer in each of the instant cases that " * * * as a result of negotiations carried on since * * * 1937 by said William R. Van Slyke in behalf of the fee owners, a mining lease * * * was entered into * * *." Such service is the equivalent of cash used for the purpose of purchasing royalty rights under the mine leases. Commissioner v. I. A. O'Shaughnessy, Inc., 10 Cir., 124 F.2d 33, 36; Commissioner v. Happold, 5 Cir., 141 F.2d 199.

11. 31 Minnesota Statutes Annotated, § 519.06.
    Transcript of the proceedings at trial show that plaintiffs rested, and thereupon counsel for defendant, among other things, said: "I think Mr. Raudenbush has developed very fully and fairly on the whole the positions and the issues of the respective parties * * *. * * * there are two issues * * *: Did Mr. Van Slyke acquire an economic interest in the mine itself so as to entitle him to percentage depletion? * * * The second, whether the purported assignments of future income * * * [are] valid for federal tax purposes? * * * It is our contention that he * * * earned that money * * * and by no device can he assign that future income * * * and avoid the tax."
    The cited statute is considered in State v. Royal Mineral Ass'n, 132 Minn. 232, 156 N.W. 128; O'Brien v. Liberty Mining Co., 164 Minn. 186, 204 N.W. 625.

12. Morgan v. Commissioner, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585; Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670.

Court of Appeals for the Eighth Circuit [13] that state law creates legal interests and rights, as distinguished from the federal laws which designate what such interests or rights shall be taxed. The distinction between the instant and the last-cited cases arises out of the undisputed facts, making clear that the services rendered by decedent with reference to the Douglas and Schley mines were identical in nature, and in each case the royalties to him were wholly dependent upon production at each mine. The fair value of the services invested by decedent constituted the "economic interest" found to exist herein, which if correct is conceded by defendant to be assignable. To say that it was an interest in income only would, in my opinion, require a "strained construction" [14] of the revenue statutes here applicable.

The Court has given serious thought and study to the points and authorities urged by able counsel for defendant during oral argument and in the government's well prepared brief but, for the reasons above set forth, is persuaded to find for plaintiffs.

Accordingly, plaintiffs may, upon due notice to defendant in each case, submit findings of fact, conclusions of law, order for judgment and form thereof, all consistent with the foregoing.

Defendant may have an exception in each case.

13. United States v. Pierce, 8 Cir., 137 F. 2d 428.

14. Blair v. Commissioner, 300 U.S. 5, 13, 57 S.Ct. 330, 81 L.Ed. 465.