ROSENBERGER v. McCAUGHN, Collector.

District Court, E. D. Pennsylvania. May 26, 1927.

No. 11466.

1. Internal revenue ⚖=7(8)—Royalties received from coal-mining lessee and dividends from lessee's stock held taxable "income" in hands of legatee.

Royalties from a coal-mining corporation, lessee, and also dividends received from the corporation as a stockholder, *held* taxable as "income," within the internal revenue statutes in hands of legatee.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Income.]

2. Courts ⚖=361, 365(3)—State laws or decisions do not define income within federal statutes.

The law of a state, as settled by decision, does not determine what constitutes income under federal internal revenue statutes.

At Law. Action by Kate W. Rosenberger against Blakeley D. McCaughn, Collector of Internal Revenue. On demurrer to statement of claim. Demurrer sustained.

Pierce Archer, of Philadelphia, Pa., for plaintiff.

George W. Coles, U. S. Atty., of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. The conclusion reached in this case is in effect to sustain the demurrer.

Discussion.

This step in the pending cause is to take advantage of the opportunity afforded by the Pennsylvania Practice Act of 1915 (Pa. St. 1920, § 17181 et seq.) to have questions of law which arise out of the statement of claim determined in advance of trial. The question here raised is a very definite and clear-cut one, but it is the kind of a question which some would look upon as a question of fact, and others as a question of law, and again one which is often characterized as a mixed question of law and fact. It is really one of those questions which has a double aspect, and may be viewed either as a question of fact or of law, accordingly as you choose your viewpoint. Trial fact findings may be well analyzed into findings of evidentiary facts and ultimate fact findings inferred therefrom. The latter class are essentially facts, although inferred by being logically deduced from the evidentiary facts. If the evidentiary facts are in controversy, the ultimate facts must be found by the trier of facts; but, if the evidentiary facts are admitted, then the inference to be drawn therefrom may be regarded as a question of law, if only one inference is permissible. The practical test of this is that in the latter case there might be a directed verdict.

It is in this narrow sense that the question is one of law, but it is such in a very practical sense. Here the evidentiary facts are not in dispute, and the question becomes this kind of a question of law. Stated in the form of a question of law, it is whether a verdict should be directed for the plaintiff or defendant, it being conceded that it should be for one or the other. Stated in the form of an ultimate fact finding, it is whether the moneys which came to the plaintiff came as income from a capital investment, or came as the return or restoration of a capital sum which had been put out for employment. More concisely stated, did the money come as the return from capital or the return of the capital itself?

The controlling question as presented by the plaintiff is whether a coal-operating company pays what it pays for coal purchased in place, or pays as lessee rent for the land from which the coal is taken. The question as presented by the defendant is whether the money received by this plaintiff under the special facts of this case is taxable net income within the meaning of the tax laws.

One difficulty in finding the meaning of the law we are now considering is that, being addressed to people in general, its language must be construed as that of common speech, and in common speech the word "income" has no definite meaning. This in turn is because the same word is used by different people, under different circumstances, and at different times, to convey different meanings. The thought common to all uses of the word is that of product, but what is product is sometimes found in the light of a theory of sound economics and sometimes without it. The differentiation seems to be dictated by the source of the income.

The man in trade, manufacturing or commercial, who withdrew from his business all the profits without withholding something for amortization, depreciation, wear and tear, reserve, or other assurance of the integrity of his capital, would be said by any business man to be withdrawing more than the net income from the business, and to be making inroads upon his capital, and results would soon confirm this judgment. When, however, a man, who is in the receipt of interest on so-called "investments" or "personal earnings," does precisely what the prudent business man does by providing through insurance or a saving fund protection from depletion of investments, or loss of earning power, or other cause of diminution of his "product," every one would say that he was making a provision for the future out of his "income." It cannot be said that the distinction is wholly arbitrary, but the line is often difficult to draw, as when any one is called upon to determine what is income and what is capital, when accretions come to be awarded to a life tenant or a remainderman. The real truth is that there is much of the ipse dixit in every such ruling, but at the same time it is guided by the conditions under which it is made.

In a broad, general view of the question in the abstract, what is income would seem to lend itself to an easy answer; but difficulties arise when we come to the particular and the concrete under practical conditions. The man who lays out his capital in such a way as that the return he gets exhausts in a shorter or longer time his entire investment makes a mistake if he deems the whole return to be net income, and allows nothing for amortization purposes, because he finds that what he had been receiving was not all a return received from his capital, but was also in large part a return of his capital. This, however, is not always true under what may seem to be like conditions.

The owner of land, of no value except for oil, coal, or other mineral, which may be taken from it, who turns it over to an operating company, finds when it is turned back to him that he has been receiving, not a rent or other return for the use of his land, but has been getting in installments the purchase price of what he had sold. On the other hand, an owner of timber land, which had a high value for agricultural or residential purposes, might sell the standing timber to a lumber company, to be taken off, and receive back land of as high or higher value than before. So likewise the owner of land having a deposit of brick clay, but which had become "ripe for development" purposes, might sell the clay, in order by its removal to bring his lands to the level of the streets ready to be laid out through it. Every landowner who sells the material in a building which is in the way of a full utilization of the land does so in the economic belief that the work of removal is an improvement. The economic test would doubtless be whether the timber, clay, buildings, or their material, was worth more or less than the cost of removal, or, expressed in other terms, whether the land cleared was worth more or less than before.

As between a possessor and a reversioner or remainderman, the legal question would perhaps be one of waste. Assuming an economic gain from the two sources of an enhanced value of the land, because of the new use, and the proceeds of what was taken from the land to adapt it to the new use, is the latter an "income" or the purchase price of what was sold? Precisely the same question is presented in reverse, when a landowner lays out money on the land. The test here commonly applied is whether the money expended was laid out in "improvements" or for "repairs." Every manufacturer uses the same kind of judgment when he figures on the cost of his product. The question of whether the profit is large or small, how much is the income, or whether there is any, is largely in the hands of him who figures.

There is no escape from this arbitrary element in the judgment reached. We get what is again essentially the same kind of a question (and, indeed, it is presented in the instant case), where one receives an "income" from an investment in a mining or other company, the source of whose "income" may dry up. The source of the income of the stockholder is the dividend declared on the stock, and this in turn is declared out of the net profits of the company, which is only another name for its net income. We thus get the thought that what is net income in the tax sense, when received by one person, may not

be net income as it reaches the hand of another. This distinction has likewise an almost wholly arbitrary basis, but we do not see how it could be held otherwise, without holding that not to be income which is derived from a source which may cease to yield.

This is akin to the distinction made in Heiner v. Beatty, 17 F.(2d) 743 (Third Circuit ruling), where it was held that moneys received were not income if they had come from one source, but were income because received from another.

The direction by a testator to his executors to pay successive annual sums to named beneficiaries is a gift, or a series of gifts; but a direction to invest moneys sufficient to yield the same annual sum, to be received by the same beneficiaries, works the change of the receipt by them, not of a gift, but of an income from a gift. We interpret this to mean that, as long as this "income" is received, the tax must be paid. If the income ceases, the tax payment would likewise cease; but the "income" is none the less income because the source of it may be exhausted.

[1] We read the will in the instant case to put this plaintiff in the receipt of income, and this in the taxing sense is unaffected by the fact (if it be one) that the coal company will sooner or later exhaust the coal deposits in the "leased" lands and cease to pay either royalties or dividends. As the tax is upon "net income," this may be found as a fact to be what a proper deduction and allowance for amortization purposes may show it to be; but this is a mere finding of how much the "net income" is, not whether it is taxable income. New Creek Co. v. Lederer (C. C. A.) 295 F. 433.

Such a question of fact could not be determined as a question of pleading. The statement of claim suggests no such question to be in the case. If it is, it can be taken care of in the order made. The question we are asked to rule we understand to be whether, under the pleaded facts, that for which the plaintiff has been taxed was received by her as a "gift of property," or whether it was received as income from property. Our finding is that it was received as income. Upon the underlying question of whether the contract between the plaintiff's testator and the coal company was a lease of land, reserving rent or a sale of coal in place, counsel for plaintiff has cited (among others) two Pennsylvania cases: Sanderson v. Scranton, 105 Pa. 469; Hosack v. Orill, 18 Pa. Super. Ct. 90.

The opinion in the one case was written by Mr. Justice Clark, and in the other by

President Judge Rice. These names stand at the very top of the list of distinguished Pennsylvania jurists. Moreover, each of them had an intimate knowledge born of long association with the subject-matter of these cases. We would not for a moment entertain the thought of dissent from any view of Pennsylvania law which they held. We in consequence accept the proposition that the contract here was, under the law of Pennsylvania, one of sale of coal in place. The right which Weiss had was to receive moneys limited in the annual sums paid by the tonnage of coal mined, and in the aggregate by the supply in the ground, and also whatever dividends the company paid on his stock holdings. This right he passed on to the trustees under his will, with directions to pay over what was received (in part) to this plaintiff as "net income or rents."

The question recurs whether what the plaintiff thus received is taxable income. The fact that the testator called it "income" or "rents" is of no more significance than if he had called it by some other name, but the words he employed do bear upon the usages of common speech. The question is one of the judicial construction of the act of Congress, and this, as we have seen, becomes necessarily one more or less arbitrary.

This takes us for a guide to the adjudged cases. Each is again necessarily ruled upon its special facts, and is sui juris; but the doctrine is applicable et id genus omne. Very little help is to be had from the line of cases which turn upon the enhancement in market price of capital assets. Income implies actual receipt, and market price is nothing more than the opinion of the market of the price which anything will command in the market, based upon the fact that a like thing has been sold at that price. The owner of anything "receives" nothing because of this, unless he sells.

The latitude which the question of what is income affords for difference of opinion is illustrated by the case of Stratton v. Howbert, 231 U. S. 399, 34 S. Ct. 136, 58 L. Ed. 285. There the question arose under a law which imposed an excise tax upon corporations "doing business," measured by the "net income" derived, and it was held that mining companies were within the act and the proceeds of sales of coal was "income." The specific question was whether the value of coal in place should be deducted from the proceeds of the sale of mined coal before the "net income" could be found. This question was ruled in the negative, but four justices dis-

sented. It was, moreover, ruled expressly as not an "income tax" question.

Stanton v. Baltic, 240 U. S. 103, 36 S. Ct. 278, 60 L. Ed. 546, was the case of a bill to restrain payment of a tax levied as an "income tax" under the act of 1913 (38 Stat. 114). The discussion was almost wholly confined to constitutional questions. The view, however, is expressed that a tax on income derived from sales of mine products is not a direct tax on property.

Von Baumbach v. Sargent, 242 U. S. 519, 37 S. Ct. 201, 61 L. Ed. 460, was the case of a corporation owner of lands, with the possession of which it had parted under a form of conveyance which in the Pennsylvania view would have been a sale of ore in place, but under the Minnesota (where the lands lay) rule was a mining "lease" of the land, reserving royalties as rent. The court saw no need to decide the question as one of Minnesota law, but held that the "so-called royalties" were "income," within the meaning of the corporation tax law of 1909 (36 Stat. 112).

United States v. Biwabik, 247 U. S. 116, 38 S. Ct. 462, 62 L. Ed. 1017, was the like case, but of an operating lessee corporation. Goldfield v. Scott, 247 U. S. 126, 38 S. Ct. 465, 62 L. Ed. 1022, records a like ruling.

[2] The conclusion reached is that the courts of the United States do not accept the Pennsylvania view of "so-called mining leases," and that, in the construction of a tax law of the United States, the law of the state in which the land is situate need not be followed, and that "so-called royalties" are income.

Leave is given for the entry of an appropriate order in accordance herewith.