GINN-COLEMAN CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7728. Promulgated June 13, 1928.

*Charles F. Swindler*, *Esq.*, for the petitioner.
*Bruce A. Low*, *Esq.*, and *George S. Herr*, *Esq.*, for the respondent.

## OPINION.

Siefkin: Petitioner complains that respondent, in his determination of net income, has allowed a deduction for merchandise purchases of only $29,748.49, as against actual total purchases of $38,229.76. The sum and substance of all the evidence had in this case is that an investigation of accounts, after the revenue agent's examination in 1923, led to the discovery of numerous invoices received in 1917, for merchandise purchases, which had not been recorded on the books, whereupon, an entry was made charging

merchandise purchases of 1917 with the amount thereof and crediting accounts payable with a corresponding amount. This is the character of the evidence upon which we are asked to base a conclusion of error by respondent, and to find that the actual merchandise purchases amounted to $38,229.76. It is not sufficient to overcome the prima facie correctness of respondent's determination.

In his investigation of petitioner's books of account for 1917, the revenue agent ascertained that no authentic record of merchandise purchases had been maintained by petitioner. He, therefore, resorted to the method set out in the findings of fact to determine what the purchases were for that year. Assuming that the figures used in his computation are correct, and we have no reason to believe they are not, the revenue agent has arrived at the correct amount of purchases, for the method is sound from an accounting standpoint and the result could not be otherwise. The figures relating to accounts payable at the beginning and end of the year, and to disbursements during the year in liquidation of purchase obligations are all taken from the books of account, and the only figure which is contested by the petitioner is the amount of accounts payable at December 31, 1917. The revenue agent shows $2,457.42, while petitioner contends that the correct amount is $10,531.07, a difference of $8,073.65. The petitioner's figure is that reflected by the books, after the adjustment entries were made following the revenue agent's examination in 1923.

There is no satisfactory explanation of the failure to record these invoices, if bona fide obligations, on the books in 1917. There is no evidence that the merchandise covered by these invoices was received in 1917, or, for that matter, at any subsequent time, and, if received in 1917, that they have been accounted for either in the sales or the closing inventory returned for that year. Mere receipt of an invoice is not proof of the receipt of the merchandise, or of the existence of an obligation. No one testified that the credits made in 1923 to accounts payable, purporting to cover these invoices, have been paid, while the evidence strongly, though not conclusively, indicates the contrary to be true. We do not know what these invoices amounted to in the aggregate. We can only surmise that they approximate the amount of the difference between the parties as to the accounts payable at December 31, 1917; they may amount to much less or much more than that difference. However, it seems inconceivable that trade obligations approximating this amount could entirely escape attention until six years after they were incurred, if indeed they were incurred, only to be discovered by the debtor upon investigation of its own accounts. In that period of time it would appear that they should have been paid or otherwise disposed of.

The evidence does not warrant a finding of error in respondent's determination.

Pointing to the reduction of income by the revenue agent, by an arbitrary amount of $421.69, in order to arrive at a net income which would fit in with a reconciliation of surplus disclosed in the balance sheet, the petitioner, relying upon the decision of this Board in the *Appeal of Bruce & Human Drug Co.*, 1 B. T. A. 342, asks the Board to set aside respondent's determination, on the ground that the revenue agent's report shows error on its face. It is true that the agent made the arbitrary reduction of income to which the petitioner refers. His explanation of that action, however, is that all deductions he has allowed, in determining net income, are based upon expenditures by checks; but that there were cash expenditures (as distinguished from expenditures made by check) of which petitioner kept no record. There is no analogy between the instant case and that cited by the petitioner. In the cited case, the method adopted by the revenue agent was a haphazard, hit or miss proposition, without any attempt to verify the entire income; and there were no logical reasons, at least they did not appear in the report, for the arbitrary adjustments of the revenue agent. Further, all facts considered in that case, the Board was irresistably led to the conclusion that there was no sound basis for the agent's adjustments. In the instant case, all details of the revenue agent's computation of net income clearly appear in the report. Each item of income and each specific deduction are clearly set forth, nothing being hid from view should the petitioner desire to make any contest in respect thereof. The correctness of none of the details of the agent's computation, other than that of purchases, has been challenged by the petitioner; and the evidence does not prove the agent's determination of purchases to be wrong. Furthermore, the testimony of the auditor who was engaged by the petitioner in 1923 to investigate its accounts clearly shows that he found it necessary to make an arbitrary adjustment of the same amount to arrive at what he regarded the correct net income.

On the question of the statute of limitations, it is apparent that the assessment and collection are not barred. The various consents in writing set out in our findings of fact extended the time for assessment to a time beyond the date the deficiency letter was mailed. Two of such consents were executed by the petitioner after the passage of the Revenue Act of 1924 and must be read with the provisions of that Act in mind. See *G. L. Ramsey*, 11 B. T. A. 345. *Cf. Joy Floral Co.*, 7 B. T. A. 800, and *Lawrence Trust Co.*, 8 B. T. A. 984.

It should also be noted that no excess-profits-tax return was filed by the petitioner and for that reason the deficiency, at least so far as it relates to those taxes, is not barred. See *Updike* v. *United States*, 8

Fed. (2d) 913. It is not necessary, however, to rest our decision upon that point, since the record shows that the deficiencies were not barred when the deficiency letter was mailed or this proceeding begun.

*Judgment will be entered for the respondent.*