Eli Kirk Price, Executor of and Trustee under the Will of Eli K. Price, Deceased, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 28057, 31919, 36554.   Promulgated July 17, 1931.

*Philip Price, Esq.*, for the petitioner.
*Otis J. Tall, Esq.*, for the respondent.

OPINION.

SEAWELL: We will consider the questions raised in the order stated.

1. The petitioner contends that under the laws of the State of Pennsylvania the coal leases herein considered constitute a sale of the coal in place and cites authorities to sustain his contention.

We do not deem it necessary to discuss the question at length, for the reason that the decisions of the courts of that State to such effect, if conceded, are not determinative nor controlling of the issues before us for decision.

In *Rosenberger* v. *McCaughn*, 25 Fed. (2d) 699 (certiorari denied, 278 U. S. 604), the court said:

.It is established beyond question that the law of the state in which property is situated governs federal courts in many things; in descent, alienation and transfer and the effect and construction of wills (*De Vaughn* v. *Hutchinson*, 165 U. S. 566, 17 S. Ct. 461, 41 L. Ed. 827) ; but whether it governs the federal government in the performance of its sovereign power to levy taxes is another question, and is the precise question here.

True, state decisions sometimes control federal legislation, for instance, in determining a deduction allowed by the federal estate tax, but that is because of the express provision—or permission—of the federal act which authorizes deduction of such charges as " are allowed by the laws of the jurisdiction * * * under which the estate is being administered." *Lederer* v. *Northern Trust Co.* (C. C. A.) 262 F. 52. But whether the federal government is limited in its selection of subjects for taxation by rules of state courts in respect to property within the state's jurisdiction is another matter and it is one on which the Supreme Court in *Von Baumbach* v. *Sargent Land Co.*, 242 U. S. 503, 518, 37 S. Ct. 201, 61 L. Ed. 460, did not feel called upon to pass, although the question there, like the one here, was whether royalties or rents were 'income, and the mere following of the state rule would have been an easy way to decide the question. In that case a Minnesota contract of " lease " substantially like the Pennsylvania contract of " sale " in this case was under consideration. That contract of lease, as the Supreme Court noted, was of a class adjudged by the courts of Minnesota and other states to be a lease as distinguished from the opposite holding by Pennsylvania courts that it is a sale. After quoting the reasoning of Minnesota courts on such instruments, the Supreme Court said in respect to its duty to follow the state rule:

" These conclusions of the Supreme Court of Minnesota are not only made concerning contracts in that state, such as are here involved, but are supported by many authorities. Ordinarily, and *as between private parties*, there is no

question of the duty of the federal court to follow these decisions of the Minnesota Supreme Court, as a rule of real property long established by state decisions. * * * Whether in considering this federal statute we should be constrained to follow the established law of the state, as is contended by the government, we do not need to determine. The decisive question in this case is whether the payments made as so-called royalties amount to income so as to bring such payments within the scope of the Corporation Tax Act of 1909 [36 Stat. 112]."

Such being the question, the Supreme Court itself construed the instrument there in question in order to determine whether the payments that were made under it were proceeds of sale, capital, or income. Wholly aside from the construction which the Minnesota courts had placed upon instruments of that kind and solely because of the nature of the payments themselves, the Supreme Court, as we read its opinion, held that the instrument there in question did not effect a sale of the property, that is, of the ore in place (*United States v. Biwabik Mining Co.*, 247 U. S. 116, 126, 38 S. Ct. 462, 62 L. Ed. 1017), and that the moneys derived from mining and paid under the instrument were not converted capital, but were royalties or rents, and as such were income, proper to be included in measuring taxes under the applicable revenue act, within the rule of *Stratton's Independence* v. *Howbert*, 231 U. S. 399, 34 S. Ct. 136, 58 L. Ed. 285, and *Stanton* v. *Baltic Mining Co.*, 240 U. S. 103, 36 S. Ct. 278, 60 L. Ed. 546. * * *

*Rosenberger* v. *McCaughn, supra*, is a Pennsylvania case, in which the issues and facts are similar to those involved in the instant case, and it was there held that the amounts received from mining properties in accordance with the terms of a testamentary trust, by which the amounts or rents due an estate under an agreement entered into prior to March 1, 1913, demising to another all the coal in place in consideration of monthly rents, were to be paid to designated beneficiaries, consist of both a return of capital in place of the coal mined and taxable income and are not simply proceeds from the sale of assets of the grantor.

In view of such decision, and in accordance therewith and other decisions hereinafter cited, we are of the opinion that, inasmuch as the amounts of depletion allowed by the respondent represent the return of capital and as such amounts are not shown to be erroneous, the income from royalties during the respective years, as determined by the respondent, is subject to tax.

In *Arthur H. Fleming et al.*, 6 B. T. A. 900, 905, we stated: " That royalties from mining ore are income and not the return of capital has been settled ever since the decisions in *Stratton's Independence* v. *Howbert*, 231 U. S. 399; 34 Sup. Ct. 136; and *Von Baumbach* v. *Sargent Land Co.*, 242 U. S. 503; 37 Sup. Ct. 201."

To the same effect, see *W. P. Ferguson*, 20 B. T. A. 130, affirmed in 45 Fed. (2d) 573, as to our decision in the matter of royalties, the court saying:

We conclude that the bonuses or cash payments for the leases were capital gains and taxable as such.

On the other hand, royalties represent the retained interest of the lessor or vendor in the property or minerals which he receives from time to time as revenues under the contract. He did not convey that interest under the deed or lease but provided that he should receive a fraction of the minerals themselves as produced. This part of his capital asset is protected and returned by another provision of the Revenue Act, to-wit, Sec. 214 (a), which allows an annual deduction for depletion, based upon production and the estimated life of the pool or deposit. For this reason the royalties cannot be considered as a capital gain.

We are of the opinion that the respondent did not err in his determination that the royalties received from the coal leases involved constituted income taxable to the petitioner to the extent determined by the respondent.

2. The petitioner has contended that if any of the income from royalties is found to be taxable, the tax should be assessed on only so much thereof as constitutes capital gain.

Section 206 (a) (1) of the Revenue Act of 1921 reads:

SEC. 206. (a) That for the purpose of this title:

(1) The term "capital gain" means taxable gain from the sale or exchange of capital assets consummated after December 31, 1921.

The petitioner in the instant cases contends that the sales were all consummated prior to December 31, 1921, and it would, therefore, appear that the income in question does not come within the provisions of the capital net gain section. However, the Board has previously held that royalty income from leases is not capital gain as defined in section 206 of the Revenue Act of 1921. *J. D. Reynolds*, 10 B. T. A. 651; *Henry L. Berg*, 6 B. T. A. 1287; affirmed by Court of Appeals, District of Columbia, 33 Fed. (2d) 641; certiorari denied, 280 U. S. 598.

3. It is admitted by the respondent that the expenses set forth in our findings of fact and claimed as allowable deductions by the petitioner are such, the full amount of $11,993.33 claimed for the year 1923 having been allowed in respondent's computation. This question is disposed of by stipulation.

4. The petitioner contends that the statutes of limitations bar the assessment and collection of the deficiencies in tax determined by the respondent for the years 1916, 1917, 1918 and 1919, all of which years are covered by Docket No. 31919. The deficiency notice relating to such years was mailed August 23, 1927.

No income-tax return was filed by the petitioner for the year 1916, and he insists that in the event of such neglect or failure section 9 (a) of Title I of the Revenue Act of 1916 required the respondent, " upon the discovery thereof, at any time within three years after said return is due, or has been made, to make a return upon information," or require the necessary corrections to be made, before any legal

assessment might be made by the respondent, and no return having been so made within three years of the due date of the tax return, assessment is barred.

Section 277 (a) (3) of the Revenue Act of 1926, in part, provides:

The amount of income, excess-profits, and war-profits taxes imposed by * * * the Revenue Act of 1916, the Revenue Act of 1917, and the Revenue Act of 1918, and by any such Act as amended, shall be assessed within five years after the return was filed * * *.

No return, as already stated, was filed for the year 1916 and as to it no statute of limitation became operative and the determination of deficiency in tax made by the respondent is approved. See *Ginn-Coleman Co.*, 12 B. T. A. 550, 555; *Henry R. Fishel et al.*, 14 B. T. A. 87, 89; *Updike* v. *United States*, 8 Fed. (2d) 913. The evidence shows fiduciary returns (Form 1041) were filed as set out in our findings of fact, but that no return (Form 1040) was ever filed for any of the years by the petitioner in his capacity as executor and trustee showing the receipt by him of taxable income from coal royalties. No return of any character is shown to have been filed for the period from November 16, 1918, to December 31, 1918. No explanation is shown by the evidence why fiduciary returns were sometimes made on the calendar year basis and at other times on fiscal year basis. Neither the fiduciary returns for calendar years nor the fiscal years, nor the two when taken together, cover the entire year 1918.

The evidence shows that petitioner's failure to return taxable income received by him as executor was not due to inadvertence or oversight, but to difference of opinion between him and the respondent regarding the character of the same. Petitioner testified in the case and was asked by his counsel: " Now, prior to the deficiency notice dated August 25, 1927, relating to the years 1916 to 1919, inclusive, had there been any communication between you and the Department as to the subject matter of this appeal?" To which he replied: " The Department had written to me several times asking whether we had made or intended to make any return, and I had a number of interviews with the proper person designated to represent the Commissioner, and the correspondence dates back as early as the beginning of 1921, our position always being in each case that we were not liable to make any such return or pay any tax on the proceeds of sale of these coal receipts and we never have made any such return yet." He also stated that the " coal royalties " were frequently a subject of discussion and correspondence. The evidence shows that the petitioner should have filed for each of the years before the Board not only Form 1041, but also Form 1040, as the coal royalties he was receiving were income taxable to the trust. He

did not file both returns, nor did he make any return of such royalties, relying upon his own judgment or that of his advisers that such royalties were not taxable income to the trust, though the contrary, as shown by the evidence, was contended by the respondent or his representatives, of which petitioner had full knowledge and deliberately disregarded at his peril. The respondent contends—and we think correctly—that under the circumstances the petitioner has failed to file required returns according to law and has not for any of the years involved filed such returns as made operative any statute of limitation barring assessment and collection of the income tax determined by the respondent, subject to the adjustments for the allowance of certain expenses stipulated and set out in our findings of fact.

The petitioner, relying on the plea of the statute of limitations, cites *Abraham Werbelovsky, Executor*, 8 B. T. A. 442, which case is clearly distinguishable from the instant case and not controlling herein. See also *Cantrell & Cochrane, Ltd.*, 19 B. T. A. 16, 26.

5. No penalty for delinquency in the matter of filing returns is asserted or sought, except for the years 1922 and 1923.

Section 250 (d) of the Revenue Act of 1921, in part, provides: " * * * in the case of a false or fraudulent return with intent to evade tax, or of a failure to file a required return, the amount of tax due may be determined, assessed, and collected * * *." In the instant case no fraud is alleged or shown, nor is such necessary in order to subject petitioner to the penalty prescribed in section 3176 of the Revised Statutes of the United States for delinquency in not filing a required return, " within the time prescribed by law or prescribed by the Commissioner of Internal Revenue or the Collector in pursuance of law."

The " failure to file a required return " may not subject the taxpayer to the penalty when a proper return is thereafter filed " and it is shown that the failure to file it was due to a reasonable cause and not to willful neglect."

The petitioner appears from the evidence to have determined to file no other returns than his fiduciary returns, Form 1041, and has continued to adhere to such determination despite the controversy with the Commissioner as to the coal royalties being taxable income.

Petitioner's case is not similar to *Adelaide McColgan*, 10 B. T. A. 958, relied on, and the latter furnishes no support for petitioner's contention.

In the circumstances disclosed by the evidence, we are of the opinion that the Commissioner did not err in asserting the penalty for the years 1922 and 1923 and accordingly approve his deficiency determination. See *Cheney D. Washburn*, 7 B. T. A. 483; *Edwin T.*

*Foreman*, 10 B. T. A. 981, 984; *Beam* v. *Hamilton*, 289 Fed. 9; *Cantrell & Cochrane, Ltd., supra*, and authorities therein cited.

> *Judgment will be entered in each case under Rule 50.*