**CONNERY et al. v. McFARLAND et al.**
**No. 5317.**

Circuit Court of Appeals, Seventh Circuit.
Feb. 6, 1935.

The Miami Coal Company is an Indiana corporation engaged in operating a coal mine. It became embarrassed financially, and, upon application of Connery and others, a receiver was appointed on November 22, 1932, to conduct its business. This appeal is from an order of the District Court directing the receiver to pay appellees the sum of $8,970.17 for the rental of premises which their predecessor leased to the insolvent coal company. The receiver did not appeal. Appellants are stockholders and creditors of the Miami Coal Company. The facts were stipulated.

On January 24, 1914, a contract called a lease, which dealt with the removal of coal from 342 acres of land which appellees' ancestors owned, was entered into between the assignors of the insolvent coal company and the ancestors and assignor of appellees. This contract provided for the payment of minimum royalties and also for specified per ton royalties. The coal mine was of the deep vein type, and there apparently were several veins. The lease covered veins three, four, and five.

The contract provided:

"It is further agreed by and between the parties hereto that the party of the second part or his assigns shall begin the mining of coal from under said lands within a reasonable time after the execution of this lease, and the said second party binds himself and his assigns after the expiration of nine (9) months from the date of this lease to mine and remove from said lands at least One Thousand (1000) tons of coal per day. * * *

"It is further agreed by and between the parties hereto that the said party of the second part and his assigns shall pay to the parties of the first part, for all screened coal mined from said veins Nos. Three and Five a royalty of four cents (4¢) per ton, screened on standard one and one-quarter inch screens, and for all mine run coal mined from said veins Nos. Three and Five a royalty of two and one-half cents (2½¢) per ton, and for all screened coal mined from said vein No. Four (4) a royalty of five cents

(5¢) per ton screened on standard one and one-quarter inch screens, and for all mine run coal mined from said vein No. Four (4) a royalty of three and one-half cents (3½¢) per ton and two cents (2¢) per ton on all rock, fire clay, sulphur and copper as mined by party of the second part, except as hereinbefore provided; payments to be made as follows: * * *"

"The said second party agrees to mine after nine months from the date of this lease, at least One Thousand (1000) tons of coal daily except Sundays and holidays and during strikes of more than thirty days duration, or in default thereof to pay each month a royalty on said number of tons of coal per day and any sums paid in excess of royalty on coal actually mined shall be treated as advance payments and shall be deducted out of any excess over One Thousand (1000) tons per day mined any month or months thereafter.

"The party of the second part reserves the right to abandon said lands and the mining of coal thereunder at any time when the coal therein and thereunder, in the reasonable and practical operation of mining said coal, can not be mined without a loss to said party of the second part * * *."

At the time of the appointment of the receivers all of the coal in veins four (except 91.89 acres from which lessee of the insolvent company took out over 53,000 tons) and five had been mined. The coal in vein three could not be mined without loss to the receivers.

Prior to the receivership the Miami Coal Company paid appellees, as earned royalties and as minimum royalties (payable in case of failure to produce 1,000 tons per day), a total of $107,667.65. The earned royalties on coal actually produced during all of said period were $68,396.91. The lessee had paid, on account of the 1,000 tons per day minimum provision, $39,270.94.

After their appointment the receivers adopted and became bound by the terms of the original lease. They subleased to a third party, who took out some 53,000 tons. The court made findings of fact and conclusions of law in favor of those whom he called the lessors, appellees before us, and the decree was duly entered in their favor for $8,700 with interest.

Earl B. Wilkinson and Samuel M. Rinaker, both of Chicago, Ill., for appellants.

Samuel D. Royse and George A. Scott, both of Terre Haute, Ind., for appellees.

Before EVANS, SPARKS, and FITZHENRY, Circuit Judges.

EVANS, Circuit Judge (after stating the facts as above).

It is upon the terms of the instrument (by appellees called a lease) and their construction by the court that this appeal turns.

Appellants contend that the instrument was one for the sale of minable coal, to be paid for when mined, with a further provision that at least 1,000 tons of coal should be mined per day, and if not royalties on such amount would be payable.

Appellees, on the other hand, contend that the contract was an ordinary twenty year lease terminable at any time by appellees. The rental was based upon the amount of coal mined, which in no instance was to be less than 1,000 tons per day.

The Miami Coal Company's predecessor agreed to mine 1,000 tons of coal a day, or in default thereof, to pay each month a royalty on 1,000 tons per day. He thereby fixed the maximum amount of liability. This maximum liability was subject to reduction, for the agreement provided that any sums paid in excess of royalties on coal actually mined *"shall be treated as advance payments and shall be deducted out of any excess over One Thousand (1,000) tons per day mined any month or months thereafter."* Deductions for advance payment were expressly limited *to any excess over 1,000 tons per day* mined in any one month. They could not be applied to the unmined coal in the mine unless we construe the entire contract as a sale of coal rather than a lease.

In states where the coal industry is active similar questions have arisen, and the decisions of analogous fact cases are to the effect that the contract is a lease not a sale of the coal. Denniston et al. v. Haddock, 200 Pa. 426, 50 A. 197; McDowell et al. v. Hendrix, 67 Ind. 513, 523; Nelson v. Republic Iron & Steel Co., 240 F. 285 (C. C. A. 8).

There are numerous words and provisions appearing in the contract which strongly support the conclusion that the instrument was a lease. The parties called it a "Coal Lease Contract." The words of grant were "lease, demise and let." The provision "this *lease* is to continue for the term of Twenty years" is also rather persuasive. This deduction is reinforced by the word used in the further provision that the party agreed after the date "of this

162

*lease,*" etc. Then too, "the lessee" was given the right to abandon said lands or the mining of coal therefrom at any time. And finally, failure of the second party to comply with the covenants "shall at the option of the first parties render this *lease* null and void."

Two decisions, Von Baumbach v. Sargent Land Co., 242 U. S. 503, 37 S. Ct. 201, 61 L. Ed. 460, and United States v. Biwabik Mining Co., 247 U. S. 116, 38 S. Ct. 462, 62 L. Ed. 1017, in the somewhat foreign field of taxation, are illuminating. In both of these cases the question presented was whether the instrument was a sale of ore or a lease of property. In both cases the court held the contracts were leases.

The decree is affirmed.