*Decision will be entered under Rule 50.*

AMERICAN SULPHUR ROYALTY COMPANY OF TEXAS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 76615. Promulgated April 24, 1936.

*R. C. Fulbright, Esq.*, for the petitioner.
*L. W. Creason, Esq.*, for the respondent.

440

## OPINION.

SEAWELL: Respondent's determination of the depletion sustained in 1930 and 1931 by petitioner is reached by the following computation on the agreed facts:

| | |
|---|---:|
| Fair market value of sulphur reserves, March 1, 1913_____ | $2,000,000.00 |
| Less: | |
| Total depletion deducted and allowed prior to January 1, 1930_____ | 1,939,834.83 |
| Value of sulphur reserves remaining for depletion at January 1, 1930_____ | $60,165.17 |
| Total estimated recoverable tonnage at March 1, 1913_____ | 5,000,000 |
| Less: Production to January 1, 1930_____ | 3,841,534 |
| Number of tons remaining in reserve at January 1, 1930_____ | 1,158,466 |
| Unit value for depletion: $60,165.17÷1,158,466=_____ | $0.051 |
| Tons produced and sold in 1930_____ | 242,280 |
| Tons produced and sold in 1931_____ | 187,045 |
| Depletion sustained in 1930 (242,280×$0.051)_____ | $12,356.28 |
| Depletion sustained in 1931 (187,045×$0.051)_____ | 9,539.30 |

Petitioner objects to this result reached by respondent in the following language in his reply brief:

The step at which petitioner and respondent are in disagreement is whether the "Total depletion deducted and allowed prior to January 1, 1930," as stated by respondent (i. e. the total depletion allowed by the Commissioner prior to January 1, 1930, as stated in the stipulation) is to be deducted from the March 1, 1913, value of the royalties, or whether the "depletion * * * sustained, whether legally allowable or not" in the sum of $1,536,613.60 is to be deducted in determining "the amount remaining in any year returnable through depletion."

The main issue, therefore, is whether $1,536,613.60 or $1,939,834.83 should be used in ascertaining the capital remaining on January 1, 1930, to be depleted. Petitioner says and contends that as of March 1, 1913, the estimated depletable sulphur content of the mine was 5,000,000 tons; that the fair market value thereof was $2,000,000 and, therefore, the unit rate per ton for depletion was 40 cents; that 3,841,534 tons were mined; and that hence the depletion sustained by it calculated at the 40-cent unit rate was $1,536,613.60, and not $1,939,834.83 as contended by respondent.

If this contention of petitioner is correct, there would seem to be nothing to prevent it, under fortuitous circumstances, from receiving deductions for depletion far in excess of the value of its capital asset, the royalty interest in the sulphur mine. This we do not think was intended to be allowed by the statutes or regulations or by both combined. During the years 1913, 1914, and 1915 deple-

tion deduction was limited to 5 percent of the gross value, at the mine, of the output of the mine for the taxable year. The word "depletion", however, was not used in the applicable statute for those years. It was first used in the Revenue Act of 1916, which provided for "a reasonable allowance for depletion * * * not to exceed the market value, in the mine, of the product thereof * * * mined and sold during the taxable year." In subsequent statutes a "reasonable allowance for depletion" is provided for. In all cases the "reasonable allowance" is to be made under rules and regulations approved by the Secretary of the Treasury.

Prior to the Revenue Act of 1916 this subject was not without confusion. See *Stratton's Independence* v. *Howbert*, 231 U. S. 399; *United States* v. *Biwabik Mining Co.*, 247 U. S. 116. Thereafter, under the rules and regulations of the Commissioner, it has been well understood that the basic concept and purpose in both depletion and depreciation is the avoidance of tax on capital.

The regulations following are pertinent.

Article 201 of Regulations 45, under the 1918 Act, provides in part:

The essence of these provisions of the statute [secs. 214 (a) (10) and 234 (a) (9) permitting depletion deductions] is that the owner of mineral deposits * * * shall within the limitations prescribed, secure through an aggregate of annual depletion and depreciation deductions the return of either (a) his capital invested in the property, or (b) the value of his property on the basic date, * * *.

By article 228 of Regulations 74 it is provided:

No revaluation of a property whose value as of the basic date has been determined and approved will be made or allowed during the continuance of the ownership under which the value was so determined and approved.

Article 229 of Regulations 74 (under the 1928 Act) provides:

Every taxpayer claiming a deduction for depletion of mines for a given year will be required to estimate or determine * * * the total units (tons * * *) of mineral products reasonably known, or on good evidence believed to have existed in the ground on the basic date, according to the method current in the industry and in the light of the most accurate and reliable information obtainable. * * *

\*  \*  \*  \*  \*  \*  \*

When information subsequently obtained clearly shows the estimate to have been materially erroneous, it may be revised with the approval of the Commissioner.

In the case of *Kehota Mining Co.* v. *Lewellyn*, 28 Fed. (2d) 995; affd., 30 Fed. (2d) 817; certiorari denied, 279 U. S. 864, the court construed article 208 of Regulations 45 in practical effect the same as article 229 of Regulations 74. The tonnage in a coal mine of the taxpayer in that case had been estimated in 1916, and the estimate

revised in 1922 when it was discovered the tonnage was less than estimated in 1916 and insufficient for the depletion allowances to secure the return of the taxpayer's capital. The court said:

Under the language of this regulation, it is perfectly plain that the new estimate is only to be applied to "the capital remaining to be recovered." * * *

The taxpayer is entitled to recover, by way of depletion, the cost of his property. A part of this cost has already been allowed to him in a computation based on the estimated quantity of mineral products in the property. On the making of a new or corrected estimate, thereafter the annual depletion allowance will be computed on the basis of the new estimate and allowed to the taxpayer, until the entire cost of the property has been recovered by way of depletion allowances. There can be no misunderstanding of the language of the regulation. The new estimate is only to be used in determining the allowances to be distributed annually to the *capital remaining to be recovered.*

In the case of *McCahill* v. *Helvering*, 75 Fed. (2d) 725, which affirmed the Board, 29 B. T. A. 1080, the court said:

Where the right to have the estimate of mineral content of a mine revised arises under the provisions of article 229 because "information subsequently obtained clearly shows the estimate to have been materially erroneous," the information and new estimate based thereon cannot justify going back to preceding tax years and changing the depletion allowances lawfully arrived at for those years. In this case the taxpayer has caused the Shenango mine to be valued for basis of depletion at $206,662.24 upon "the best information obtainable" and had, on account of such valuation, deducted from gross income over a period of seven years some thousands of dollars more than would have been deductible if the valuation had been on the basis of the later information. But where revision is made on account of "information subsequently obtained," the government cannot go back into the prior years and recover the excessive deductions, and neither can the taxpayer go back to the years 1929 and 1930, before the error was known, and, by obtaining deductions for those years, upset the basis for depletion as it stood in those years.

The Board said in *Stouts Mountain Coal Co.*, 4 B. T. A. 1292, 1294:

* * * At the time the petitioner started operations, and during the year 1920, it believed that the recoverable tons of coal in its property were 400,000. It developed, however, prior to the close of its fiscal year ended October 31, 1921, that the recoverable tons were in all not in excess of 75,000. The depletion deduction for such year is the undepleted cost of the coal in place at the beginning of such year; in other words, the undepleted cost on November 1, 1920, should be spread over the number of tons of coal removed during the fiscal year ended October 31, 1921. * * *

Unfortunately for petitioner's contention, there is no evidence of any estimate having been made at any time of the total units (tons) of sulphur in the mine as article 229, *supra*, requires petitioner to make. It is alleged in the petition that (at some undisclosed time) the "Mines and Mineral Section of the Commissioner of Internal Revenue" valued the interest of petitioner in said Bryan Mound, as of March 1, 1913; and made an estimate of 3,459,000 recoverable tons

of sulphur of the value of $1,963,135.93. But it is further alleged in the petition that these "estimates were revised from time to time * * *." These allegations were denied in the answer. What estimates of the sulphur content of the mine were being used during the years prior to 1930 in calculating the depletion deduction is in no way shown.

Under the circumstances here present, we must reject the petitioner's contention that in ascertaining the capital remaining on January 1, 1930, to be depleted, the sum of $1,536,613.60 should be used, and hold, with respondent, that the sum of $1,939,834.83, the amount allowed, should be used. It follows that petitioner's capital remaining for depletion on January 1, 1930, was $60,165.17.

Respondent's computation as above set forth in this opinion complies with article 231 (b) of Regulations 74, and is approved.

*Judgment will be entered under Rule 50.*